IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRY S.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

Civ. No. 3:18-cv-01661-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

      Plaintiff Sherry S. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

      Plaintiff alleges that the Administrative Law Judge ("ALJ") erred in : (1) finding that Plaintiff's knee disorder was "non-severe"; (2) failing to credit Plaintiff's testimony as true; (3) failing to credit the statements of Plaintiff's brother; (4) crafting Plaintiff's residual functional capacity ("RFC"); and (5) determining substantial gainful activity ("SGA"). Because there is substantial evidence in the record to support the ALJ's findings and errors, if any, were harmless, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on July 14, 2015, alleging disability since June 15, 2015. Tr. 213–23, 36. Both claims were denied initially and upon reconsideration. Tr. 92–109. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Linda Thomasson on June 9, 2017. Tr. 159–60, 55–91. ALJ Thomasson denied Plaintiff's claim by a written decision dated August 28, 2017. Tr. 33–49. Plaintiff sought review from the Appeals Council and was denied on July 17, 2018, rendering the ALJ's decision final. Tr. 207–12, 1–7. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 36 years old at the time of her alleged disability onset and 38 at the time of her hearing. *See* tr. 61, 36, 55. Plaintiff has a GED and an associate's degree in business. She has engaged in past work doing data input and research and she has clerked at a community college and a hotel. , . Tr. 28, 47, 61–62, 38, 67–68, 251. Plaintiff alleges disability due to fibromyalgia, idiopathic hypersomnia, polyarthralgia, edema, and nerve damage. Tr. 136, 250.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the

administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### **I. Plaintiff's Knee Disorder**

Plaintiff argues that the ALJ erred both by finding that Plaintiff's knee disorder was non-severe and by minimizing the impact of the knee disorder on Plaintiff's ability to work, especially when combined with the effects of her obesity. Pl.'s Br. 5, ECF No. 10.

At step two, the ALJ must assess whether the claimant's impairment or combination of impairments is severe. *Tackett*, 180 F.3d at 1098; *see* 20 C.F.R. § 404.1520(c). If not, the

claimant is not disabled. *Id.* If so, the ALJ identifies the severe impairment(s) then continues to step three. *Id.* A severe impairment is an "impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling 96-3p, 1996 WL 374181). In determining the claimant's RFC at later steps, the ALJ must consider the "total limiting effects" of all of the medically determinable impairments, both "severe" and "non-severe," including the effect of pain. 20 C.F.R. §§ 404.1545(e), 416.945(e); *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Where an ALJ errs in omitting a severe impairment at step two, the error is harmless so long as the ALJ considers *all* of the claimant's functional limitations at subsequent steps (including those caused by the omitted severe impairment). *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ found that Plaintiff's knee disorder was non-severe but considered it in conjunction with her severe impairments. Tr. 39. Substantial evidence exists in the record to support the ALJ's finding. Even if the ALJ erred, such error would be harmless because the ALJ found in Plaintiff's favor at step two and considered her knee disorder in determining her RFC in later steps. The ALJ found that Plaintiff complained of bilateral knee pain, especially in her right knee, during activity in March 2016. Tr. 39. (citing tr. 556). There was, however, no sign of inflammatory arthritis and her symptoms were most consistent with overuse or mechanic arthritis. *Id.* June 2016 x-rays were unremarkable. Tr. 39 (citing tr. 539, 546–47). In August

2016, she reported loss of balance due to her left knee giving way and was referred to a magnetic resonance imaging scan ("MRI"). Tr. 39 (citing tr. 570). Her left knee was tender along the anterior joint line but had normal range of motion and no warmth of effusion, and her right knee was relatively normal. *Id.* A March 2017 MRI of her left knee showed mild degenerative patella changes but was otherwise normal, and her knee pain had improved. Tr. 39 (citing tr. 435).

Plaintiff argues that she regularly had knee pain, which increased with activity, and related limitations. Pl.'s Br. 5 (citing tr. 556). She also argues that she suffered from "loss of balance due to knee give away." Pl.'s Br. 5 (citing tr. 570). Plaintiff fails to explain how these factors limit her ability to do basic work activities beyond the ALJ's findings. The ALJ acknowledged Plaintiff's knee pain and loss of balance but reasonably concluded, based on the substantial evidence cited above, that Plaintiff's knee disorder was non-severe. The ALJ also properly found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence of record, as discussed below. *See* tr. 43. Further, the ALJ considered Plaintiff's knee pain and related limitations in determining her RFC. Tr. 43–44. The ALJ found that physical examinations and x-rays of Plaintiff's knees were generally unremarkable. *See id.*; *see also* tr. 434–35, 545–48, 557. The ALJ also found that Plaintiff's knee pain symptoms were multifactorial, secondary to weight, chronic ankle strain, and possible fibromyalgia. Tr. 44 (citing 539).

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff's knee disorder was non-severe. Even if the ALJ erred, such error was harmless.

## II. Plaintiff's Credibility

Plaintiff argues that the ALJ improperly discounted Plaintiff's statements in determining her RFC. Tr. 7–8. Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 43. Plaintiff testified that she quit her last job because it was too much for her given her conditions. Tr. 67. She cannot work because she is "always exhausted" and often confused. Tr. 69. She loses focus easily and has difficulty with new training. *Id.* She often falls asleep at work and makes mistakes. *Id.*, tr. 79–80, 83. She does not do many chores after work because her hands, neck, back, legs, and ankles are usually too sore but does them on her days off. Tr. 72, 77. She works partial days Saturday through Tuesday and tries to recover physically on her days off. Tr. 72. She does not go out much because she is usually too tired. Tr. 74. She gets migraines often, she thinks due to her neck issues. Tr. 76. She needs to get up a lot at work to use the restroom and stretch because her muscles or legs swell or she needs to stretch her back. Tr. 77. She has a hard time grocery shopping because of her pain. Tr. 78. She could not physically work 40 hours per week. *Id.* She sleeps 8 or more hours per week but is always exhausted and feels she needs to take a nap every 2 hours. Tr. 78–79. She can sleep up to 16 hours on her days off due to her idiopathic hypersomnia. Tr. 79. She frequently has a hard time gripping things due to her osteoarthritis, which comes and goes. Tr. 81. She has not tried physical therapy because she thinks osteoarthritis is the issue. Tr. 82.

The ALJ found significant inconsistencies between Plaintiff's testimony and the objective medical evidence in the record. Tr. 43. Plaintiff's morbid obesity remained stable but physical examinations revealed minimal tenderness, rare edema, and normal neurology, range of motion (except for at the shoulders, wrists, and ankles in July 2015), and muscle strength and tone. Tr. 43; *see* tr. 403, 408, 422, 424, 442, 434, 494, 544, 556, 584. There was no evidence of significant

arthritis in any of her joints, though her symptoms were consistent with fibromyalgia. *Id.*; *see* tr. 464, 484, 539, 546–47, 516, 570.

The ALJ found that the objective medical evidence in the record suggests that Plaintiff had a sleep disorder, but her diagnosis was unclear. Tr. 44–45. She presented as alert with no observed fatigue symptoms or difficulties with focus, concentration, or memory. *Id.* (citing tr. 356–65, 385, 390, 403, 407, 427, 421, 424, 434, 444). Moreover, her treatment providers recommended that she establish better sleep hygiene and lose weight, but she resisted. Tr. 44–45; *see* tr. 406, 426–27, 429. "[The Ninth Circuit has] long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.)) (internal quotation marks omitted). Here, Plaintiff points to no legitimate reason for failing to follow the recommended course of treatment.

The ALJ also found that Plaintiff's daily activities were inconsistent with Plaintiff's allegations of disabling symptoms and limitations. Tr. 45. A claimant's daily activities may be grounds for an adverse credibility finding if she "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

Here, the ALJ found that Plaintiff is fairly active and independent. Tr. 45. She lives alone, manages her personal care, household, and finances independently, does household chores, uses public transportation, goes shopping, reads, watches television and movies, and plays video games. Tr. 45–46; *see* tr. 73–75, 296. Notably, she works part-time. Tr. 46 (citing tr. 422); *see* tr. 72. She also received unemployment benefits, which suggest Plaintiff actively applied for and claimed to be capable of work. Tr. 46; *see* tr. 243, 422.

Plaintiff argues that the ALJ improperly considered her statements, pointing to difficulties with movement, pain, swelling, spasms, stiffness, tenderness, fatigue, and weakness, an abnormal electromyogram/nerve conduction velocity study, abnormal knee imaging, fibromyalgia, and weight increase. Pl.'s Br. 7–8 (citing tr. 43, 352, 435, 388, 392, 522). The ALJ noted Plaintiff's difficulties but contrasted them with largely normal examinations and lack of evidence of inflammatory arthritis. *See* tr. 43–44. The abnormal study in February 2015 revealed "evidence of old reinnervation in the tensor fascia latae"—restoration of nerve supply in the thigh muscle—"bilaterally (superior gluteal nerve, L4-S1 nerve roots)" with no evidence of active denervation or polyneuropathy and otherwise normal muscles. Tr. 352. As discussed above, a March 2017 MRI of Plaintiff's left knee showed mild degenerative patella changes but was otherwise normal, and her knee pain had improved. Tr. 39, 435. The ALJ considered Plaintiff's fibromyalgia, which she determined was severe, but noted evidence that Plaintiff had no swelling, full range of motion, and stable symptoms/improved pain in August 2015, mild ankle pain in February 2017, and no tenderness in March 2017. Tr. 39, 43–44. The ALJ also noted that Plaintiff weighed 272 pounds in August 2015 and 281 in March 2016. Tr. 43–44.

Plaintiff does not explain how this evidence is consistent with her alleged symptoms, nor does she point to any substantial evidence that the ALJ overlooked.

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff was not entirely credible. Therefore, the ALJ did not err in discounting Plaintiff's credibility.

### III. Third Party Statements

Plaintiff argues that the ALJ improperly rejected her brother's statements by failing to explain what limitations he overestimated. Pl.'s Br. 9. Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members." (citation omitted)). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Bias "in the abstract," such as a familial relationship, is not per se a germane reason to discredit a lay witness. *Dale v. Colvin*, 823 F.3d 941, 944–45 (9th Cir. 2016) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Here, Plaintiff's brother—Nelson S.—essentially reiterated Plaintiff's statements. *Compare* tr. 333–34 *with* 67–82, 289–300. He said she had problems walking and cannot walk or stand for long before her ankles and feet swell. Tr. 333. She has a hard time focusing and is constantly tired and lethargic. *Id.* She never has the energy to do much, and when she does her symptoms become worse. *Id.* She nods off in the middle of things and tends to lose things on public transportation due to her pain, fatigue, and inability to focus. *Id.* She no longer enjoys going out or spending time with friends and is often confined to her home. *Id.* When they lived together, he had to go to the store and fetch things from across the room for her because she had difficulty doing so. Tr. 334.

The ALJ gave little weight to Nelson S.'s statements, finding that he overestimated Plaintiff's limitations in a manner inconsistent with the record and the objective medical evidence previously discussed in her opinion. Tr. 46; *see also* tr. 43–46. It is true that the ALJ failed to explain what limitations Nelson S. overestimated or provide germane reasons for discounting his statements. Nonetheless, because Nelson S.'s statements do not describe any limitations that Plaintiff had not already alleged, the ALJ's reason for rejecting Plaintiff's testimony "apply equally well to the lay witness testimony." *See Molina*, 674 F.3d at 1117. The error was harmless.

## IV. The ALJ's RFC Finding

Plaintiff argues that the ALJ erred by failing to account for all of Plaintiff's impairments in determining Plaintiff's RFC. Pl.'s Br. 7. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p,

1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001).

Here, the ALJ found that Plaintiff had the RFC to perform medium work and could "frequently climb, stoop, kneel, balance, crouch, and crawl" but should "avoid all exposure to hazards such as unprotected heights or moving mechanical parts." Tr. 42. The ALJ also found that Plaintiff could perform past relevant work as a hotel/motel front desk clerk. Tr. 47. The ALJ considered Plaintiff's and her brother's statements but properly concluded that they were not fully consistent with the evidence of record, as explained above. Tr. 42–46. The ALJ also considered Plaintiff's treating providers, consultative evaluator, and state agency consultants' medical opinions. Tr. 46–47.

The ALJ found that Dr. John Ellison's, M.D., relatively normal findings upon examination supported the RFC. Tr. 47. In September 2015, Dr. Ellison found that Plaintiff was very obese but otherwise healthy. Tr. 46 (citing tr. 396–98). She had general thyroid enlargement but a non-tender neck and normal range of motion, a slightly tender lumbosacral joint but no muscle spasm and very good range of motion, and no arthritic stigmata and excellent range of motion in her extremities. *Id.* She could squat and rise and had normal gait and station, motor strength, bulk and tone, and sensation. *Id.* She had chronic back pain but an essentially negative examination and very good range of motion. *Id.* She had chronic anxiety, a phobia of crowds,

daytime sleepiness but a normal sleep study, untreated goiter, and controlled gastroesophageal reflux disorder. Tr. 46–47 (citing tr. 396–98). The ALJ gave the state agency medical consultants' opinions little weight, finding they were inconsistent with the record as a whole. Tr. 47.

Plaintiff argues that the ALJ failed to account for her knee limitations, fibromyalgia pain, swelling, stiffness, tenderness, and muscle spasms, obesity, fatigue, and decreased grip strength and arm weakness. Pl.'s Br. 7 (citing tr. 464–66, 494, 556, 570, 356–65, 403, 434–44, 530, 536, 584). The ALJ found that Plaintiff's knee disorder was non-severe but considered it in conjunction with her severe impairments in determining her RFC, as explained above. *See* tr. 39. The ALJ found that Plaintiff's fibromyalgia, obesity, and sleep disorder were severe and considered the effects of these impairments in light of the record as a whole, which the ALJ summarized in evaluating Plaintiff's credibility *See* tr. 39, 42–47.

Specifically, the ALJ acknowledged Plaintiff's fibromyalgia and summarized the related objective medical evidence of record. Tr. 43–44 (citing tr. 464–65, 494, 556, 570). The reports Plaintiff cites are unpersuasive. For example, she made subjective complaints in July 2015 but only had intermittent muscle spasm, which moving helped alleviate. Tr. 464. She had no swelling or tenderness and full range of motion except for at multiple tender points, but not her hip, lumbar spine, or cervical spine. *Id.* She had normal x-rays, neuropathic pain that gabapentin managed, no swelling, and full range of motion except for tenderness to palpation at her bilateral shoulders, wrists, and ankles. Tr. 494. In March 2016, she had pain during activity, but not before or after, and was directed to follow up 6 months later. Tr. 556. Additionally, she was referred to physical therapy but did not pursue it. *Id.*; *see also* tr. 82. She reported pain in August

2016 but had recently started a new job and was walking more and was to follow up in 3 to 6 months. Tr. 570.

The ALJ also acknowledged Plaintiff's weight gain from August 2015 to April 2017. Tr. 43–44 (citing tr. 380, 403, 584). Likewise, the ALJ summarized the objective medical evidence of record regarding Plaintiff's sleep disorder. Tr. 44–45 (citing tr. 434, 444, 356–65, 359, 390, 385, 407, 403, 427, 424, 421). Plaintiff again cites her own subjective complaints, arguing that she fell asleep at work and had ongoing issues with sleep and chronic fatigue. Pl.'s Br. 7 (citing tr. 464, 403, 464, 433–44, 465, 530, 536). As explained above, the ALJ acknowledged Plaintiff's abnormal sleep study but found that her diagnosis was unclear and she failed to follow a prescribed course of treatment. Tr. 44–45; *see* tr. 406, 426–27, 429. The ALJ also found no objective medical evidence of record of observed fatigue signs or symptoms or difficulty focusing, concentrating, or memorizing. *Id.* (citing tr. 356–65, 385, 390, 403, 407, 427, 421, 424, 434, 444).

Finally, Plaintiff reported in April 2017 that she "occasionally" felt arm weakness. Tr. 584. Physical examinations in September 2015 and March 2017, however, revealed normal strength, coordination, and reflexes. Def.'s Br. 11, ECF No. 12 (citing tr. 397, 434). Because substantial evidence of handling and/or gripping limitations does not exist in the record, the ALJ did not err in omitting them from the RFC. *See Osenbrock*, 240 F.3d at 1163–65.

The ALJ's RFC finding is supported by substantial evidence in the record.

## V. SGA

Because substantial evidence supports the ALJ's findings and errors, if any, were harmless, the Court does not reach Plaintiff's argument that the ALJ improperly determined SGA.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this __15th__ day of October, 2019.

                                                s/ Michael J. McShane
                                                Michael J. McShane
                                                United States District Judge